STONE ET AL. *v.* STATE EX REL. BOSSONG
[No. 26,366.   Filed March 13, 1935.]

*Cassius W. McMullen,* for appellants.

*Estal G. Bielby,* for appellee.

TREANOR, J.—The relator, John M. Bossong, is the county school attendance officer of Dearborn County, Indiana. Appellants, defendants below, as members of the county council, and the board of commissioners of Dearborn County, refused to appropriate the funds necessary for salary and expenses connected with his office. Relator brought this suit to mandate defendants to make an appropriation for that purpose. Defendants

demurred to the complaint on the theory that the statute[1] providing for the appointment of a county attendance officer is unconstitutional. Defendants' demurrer to the complaint was overruled and upon their refusal to plead further judgment was rendered for the relator. The overruling of the demurrer is the sole error assigned upon appeal.

In the case of *State ex rel. Test* v. *Steinwedel* (1932), 203 Ind. 457, 180 N. E. 865, the constitutionality of the statute here under consideration was upheld as against the contentions (a) that the act embraced more than one subject, (b) that the act authorized the taking of property without just compensation, and (c) that the act was in violation of §1 of Art. X, Indiana Constitution, requiring a "uniform and equal rate of assessment."

In the instant case, under Points and Authorities, appellants rely upon the proposition that the act is violative of §1, Art. III,[2] §1, Art. XV,[3] §2, Art. VI,[4] and §3,

[1] §6448, et seq. Burns Ann. Ind. St. 1926; Acts 1921, ch. 132, § 1, p. 337. This statute was amended subsequent to the date of realtor's appointment and prior to bringing this suit (Acts 1932, ch. 29, p. 47; §28-501 and §28-502, Burns Ind. St. Ann. 1933) but the amendment does not affect the questions presented in this appeal.

[2] "The powers of the government are divided into three separate departments; the legislative, the executive including the administrative, and the judicial; and no person, charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided." Art. III, §1.

[3] "All officers, whose appointment is not otherwise provided for in this Constitution, shall be chosen in such manner as now is, or hereafter may be, prescribed by law." Art. XV, §1.

[4] "There shall be elected, in each county by the voters thereof, at the time of holding general elections, a clerk of the Circuit Court, auditor, recorder, treasurer, sheriff, coroner, and surveyor. The clerk, auditor, and recorder, shall continue in office four years; and no person shall be eligible to the office of clerk, recorder, or auditor, more than eight years in any period of twelve years; and no person shall be eligible to the office of treasurer or sheriff more than four years in any period of six years." Art. VI, §2.

Art. VI[5] of the Indiana Constitution in that it violates "the right of local self government" because the general assembly has undertaken to fix "an absolute minimum price to be paid" a county attendance officer, and because "the people have no voice in his election."

We agree with appellants' statement that the question involved in this case is whether the general assembly can delegate the power of appointing a county attendance officer "to the county superintendent and county board of education and at the same time fix the salary to be paid between absolute limits, making appointment and payment mandatory." (Appellants' Reply Brief, p. 2.)

The case of *State ex rel. Jameson* v. *Denny* (1889), 118 Ind. 382, 21 N. E. 252, relied upon by appellants in support of the proposition that the office involved cannot be filled in the manner prescribed in the act in question, is not in point. This court there held that the language of §1, Art. XV, Indiana Constitution, did not confer upon the General Assembly the power to elect members of a board of public works. The court pointed out that "the power to provide by law the manner or mode of making an appointment does not include the power to make the appointment itself." The compulsory school attendance act does not provide for the appointment of a county attendance officer by the General Assembly and there is nothing in the case cited to sustain the proposition that the manner or mode of making such appointment, as provided by the General Assembly, is in conflict with any constitutional provision.

The case of *State ex rel. Geake* v. *Fox* (1902), 158 Ind. 126, 130, 63 N. E. 19, is relied upon by appellants as supporting the proposition that there exists in the

[5] "Such other county and township officers as may be necessary, shall be elected, or appointed, in such manner as may be prescribed by law." Art. VI, §3.

citizens of Dearborn County a right of local self-government which is violated by action of the General Assembly in providing that an attendance officer shall be chosen and fixing the limits of his salary. The question before this court in that case was stated by the court to be: "Has the legislature constitutional authority to place the management of the fire department of municipal corporations under the control of boards appointed by the Governor?" The following excerpts from the opinion indicate that the court recognized that the General Assembly's control over many subjects is not restricted by any right of local self-government:

"It is well to note at the beginning that this question does not challenge the right of the State to supervise the power of municipal bodies so far as it relates to subjects of public concern, such as the preservation of the peace, the construction and care of public streets, sewers, and the like, but the inquiry here is restricted to the power of the legislature to strip a town or city organization of all right to manage in its own way the exclusively private property it is authorized to acquire. In other words, may the General Assembly, for the purpose of permitting an increase of local comfort and welfare, authorize a city to levy taxes upon its own inhabitants, and therewith provide engine-houses, engines, horses, hose, ladders, hospitals, libraries, markets, charities, public halls, and parks, all for the exclusive use, and at the exclusive expense, of the city, and, having once acquired those things according to the tastes, ability, and judgment of those required to pay for them, may the State, with constitutional approval, capriciously step in and turn out the city's chosen custodians and employes, and place its own commissioners in charge, with power to change what the city has selected, to buy and sell, to contract debts, to appoint to office, to make employments, to fix salaries, and charge all costs and expenses to the city?"

We think it is clear from the foregoing that the reasoning of this court in *State ex rel. Geake* v. *Fox, supra,*

cannot apply to any act of the General Assembly relating to the organization and administration of our public school system which, by express constitutional declaration, has been made a state institution and placed under the exclusive power of the General Assembly. In *State ex rel. Clark* v. *Haworth* (1890), 122 Ind. 462, 23 N. E. 946, it was urged that certain legislation affecting the administration of schools violated the right of local self-government. In reply to that contention this court spoke as follows:

"But the courts which have carried to its utmost extent the doctrine of local self-government have never so much as intimated, that it exists as to a matter over which the Constitution has given the law-making power supreme control, nor have they gone beyond the line which separates matters of purely local concern from those of State control. Essentially and intrinsically the schools in which are educated and trained the children who are to become the rulers of the commonwealth are matters of State, and not of local jurisdiction. In such matters, the State is a unit, and the Legislature the source of power. (p. 465).

"It has, indeed, been the uniform course since the organization of the State, to regulate and control school affairs by legislation. All the public schools have been established under legislative enactments, and all rules and regulations have been made pursuant to statutory authority. Every school that has been established owes its existence to legislation; and every school officer owes his authority to the statute." (p. 468).

The General Assembly is under a constitutional duty "to provide by law for a general and uniform system of common schools." (§1, Art. VIII, Indiana Constitution). "It was evidently the intention of the framers of the Constitution to place the common school system under the direct control and supervision of the state, and make it a *quasi* department of the state government." (*Greencastle Twp.* v. *Black* (1854), 5 Ind.

557, 563.) The work of a county attendance officer obviously contributes to the efficiency of the school system and is a proper and legitimate instrumentality therefor. School officials are agencies of the state employed in the administration of the school system; and regardless of whether their authority and duties are state-wide or are limited to smaller administrative units they are a part of the state school system and perform a state function. The office of county attendance occupies the same relation, legally, to the state school system and the local community as the office of county superintendent. Respecting the latter this court made the following statement:

> "The office in question belongs to the executive department of the State, and the duties attached to it are, strictly speaking, of a merely administrative character, that is, are in aid of the execution of, and assist in giving force and effect to, other provisions of our common school system." *Elmore* v. *Overton* (1886), 104 Ind. 548, 552, 4 N. E. 197.

We are of the opinion that the General Assembly has the power to create the school office of county attendance and to determine the method of selection of the attendance officer and to make such selection and payment of salary mandatory.

> "The General Assembly may decide that certain activities of the business of government are so important that the supplying of funds to carry on these activities must not be left to the discretion of local authorities. The operation of the business of government as provided by law is a public necessity. The business of public education cannot be determined in the case at bar to be of greater or less necessity than the business of public highways, the business of raising public revenue, or of any other particular public business, but, we may, and do, determine, for the purpose of deciding this case, that the business of public education, as provided by the Constitution and statutes, is equal to and not

inferior to any other business of the government.' *State, ex rel.,* v. *Board, etc.,* (1931), ante 23, 178 N. E. 563, 568." *State, ex rel. Test* v. *Steinwedel,* (*supra* p. 473).

We conclude that the provisions of Ch. 132, Acts 1921, as amended by Ch. 29, Acts 1932 (special session), *supra,* are not open to the objection that they violate any constitutionally protected right of local self-government.

Appellee's complaint stated a cause of action and the trial court did not err in overruling appellants' demurrer thereto.

Judgment affirmed.