632 So.2d 953 (1994)
IN THE INTEREST OF R.G. Defending The Constitutionality of the Mississippi Statute.
No. 92-CA-1295.
Supreme Court of Mississippi.
February 17, 1994.
Michael C. Moore, Atty. Gen., James F. Steel, Sp. Asst. Atty. Gen., Jackson, for appellant.
Richard Flood, Ridgeland, for appellee.
En Banc.
McRAE, Justice, for the Court:
This appeal arises from an October 14, 1992, opinion by the County Court Judge of *954 Madison County finding that the Compulsory School Attendance Law, Miss. Code Ann. § 37-13-91 (1990), is unconstitutional insofar as it requires the selection and supervision of school attendance officers to be undertaken by youth court judges. The Attorney General, following his statutory mandate, appeals the adverse ruling to this Court. We affirm the County Court Judge's finding that the statute violates art. I, §§ 1 and 2 of the Mississippi Constitution of 1890, but reverse his order reassigning the Madison County school attendance officers to the State Superintendent of Education for supervision of duties related to the compulsory attendance law since, under his finding that the statute was unconstitutional, he had no authority to make the reassignments.
R.G., a fourteen year old charged with truancy, objected to testimony by a school attendance officer, acting in her official capacity, during a youth court hearing held on December 18, 1991, on grounds that her position violated art. I, § 2 of the Mississippi Constitution, the separation of powers provision.[1] R.G.'s attorney then filed a motion to declare parts of the Mississippi Compulsory School Attendance Law unconstitutional. A hearing on the motion was held and Madison County Court Judge William S. Agin, acting as Youth Court Judge, sustained the objection. Judge Agin, in a lengthy written opinion, found that Miss. Code Ann. § 37-13-91, which requires youth court judges to appoint and supervise school attendance officers, to be unconstitutional. Reviewing the legislative history of the school attendance law and relying on Alexander v. State, by and through Allain, 441 So.2d 1329 (Miss. 1983) and In re Anderson, 447 So.2d 1275 (Miss. 1984), Judge Agin stated that:
For the reasons stated herein, this Court finds that Section 37-13-91 is unconstitutional to the extent that it (1) makes the school attendance officers the employees of the youth court, (2) requires the youth court judges to appoint school attendance officers, (3) requires judges to supervise and establish duties of school attendance officers relating to compulsory attendance which are commonly and historically those found in the executive branch of state government, (4) requires employees of the judiciary to file a youth court petition or initiate criminal proceedings as part of their official duties, (5) requires the judges or other judicial officials or employees to perform any executive functions or duties formerly or historically performed by executive officials or employees, (6) places the youth courts and youth court judges subordinate to or under the direction, control or authority of any executive branch, agency, office, official or employee or, (7) makes any executive branch, agency, office, official or employee answerable or subject to the control or authority of youth court judges except through the traditional exercise of judicial power pursuant to process or court order.
Judge Agin has long harbored concerns about the constitutionality of the school attendance law. As Chairman of the School Attendance Law Study Group, Conference of Youth Court Judges, he sought opinions from the Attorney General in 1983 and 1989 on the separation of powers question as well as whether school attendance officers were employed by the executive or judicial branch of government or both, and further, whether they were state or county employees. In 1989, again writing on behalf of the Conference of Youth Court Judges, Judge Agin asserted that the placement of school attendance officers is properly within the executive branch of government, citing several authorities
for the proposition that the legislature cannot authorize a judge when acting judicially to exercise powers that are not incidental to the discharge of any legitimate judicial function and that pertain essentially and distinctively to either of the other two functions nor can judges be required to perform duties other than judicial duties or have imposed upon them by the legislative branch ministerial or other nonjudicial duties.
*955 Pursuant to Miss. Code Ann. § 7-5-1 (1991) and M.R.C.P. 24(d), which require the Attorney General to defend the constitutionality of any statute of the State of Mississippi, the Attorney General brings this appeal.

I.
Determination of whether state statutes are constitutional is a "judicial question" reserved for courts of competent jurisdiction. Golden v. Thompson, 194 Miss. 241, 246, 11 So.2d 906, 907 (1943). We have recognized that this Court has "the power to construe the constitution and thus define the powers of the three branches of government." State v. Wood, 187 So.2d 820, 831 (Miss. 1966).
The Court, in In the Interest of T.L.C., 566 So.2d 691 (Miss. 1990), reiterated the scope of our power of review when interpreting the constitutionality of statutes:
Without doubt, our constitutional scheme contemplates the power of judicial review of legislative enactments, Alexander v. State ex rel. Allain, 441 So.2d 1329, 1333 (Miss. 1983); however, that power may be exercised affirmatively only where the legislation under review be found
in palpable conflict with some plain provision of the ... constitution.
566 So.2d at 696, quoting Hart v. State, 87 Miss. 171, 176, 39 So. 523, 524 (1905). We recalled that statutes come before us clothed with a heavy presumption of constitutional validity. Id. We further stated:
The party challenging the constitutionality of a statute is burdened with carrying his case beyond all reasonable doubt before this Court has authority to hold the statute, in whole or in part, of no force or effect. [citations omitted] When a party invokes our power of judicial review, it behooves us to recall that the challenged act has been passed by legislators and approved by a governor sworn to uphold the selfsame constitution as are we.
566 So.2d at 696. Finding that R.G. has met the required burden of overcoming the presumption of constitutionality that undergirds our statutory law, we affirm the County Court Judge's opinion that Miss. Code Ann. § 37-13-91 (1990) is unconstitutional and violates the separation of powers doctrine, art. I, §§ 1 and 2 of the Constitution of 1890.

II.
Miss. Code Ann. § 37-13-91 (1990), the Mississippi Compulsory School Attendance Law, requires all children between the ages of six and seventeen to attend school. To enforce provisions of the law, § 37-13-91(7) provides that "[t]he youth court or family court judge shall appoint one or more school attendance officers." School attendance officers are charged with locating and identifying all children of compulsory school age who are not attending school; investigating their absence or nonenrollment; visiting the homes of these children to determine the cause of their failure to attend school; and providing counseling, and where necessary, securing appropriate social services. Section 37-13-91(7)(h) further requires school attendance officers to perform "all other duties relating to compulsory school attendance established by the youth court or family court," including the filing of a petition with the youth court when all other measures taken to secure a child's attendance have failed.
R.G. asserts, and the County Court Judge so found, that the youth court judge's selection and supervision of school attendance officers, as provided for in the statute, violates art. 1, §§ 1 and 2 of the Mississippi Constitution. We agree. Section 1 provides as follows:
The powers of the government of the state of Mississippi shall be divided into three distinct departments, and each of them shall be confided to a separate magistracy, to wit: those which are legislative to one, those which are judicial to another, and those which are executive to another.
Section 2 further provides:
No person or collection of persons, being one or belonging to one of these departments, shall exercise any power properly belonging to either of the others. The acceptance of an office in either of said departments, shall, of itself, and at once, vacate any and all offices held by the persons so accepting in either of the other departments.
*956 Defending the constitutionality of the statute, the State seeks to limit the separation of powers doctrine to state level governmental positions. The State relegates the school attendance officer position to the status of a local office, and based on Justice Banks' concurring opinion in Ball v. Fitzpatrick, 602 So.2d 873, 877 (Miss. 1992), argues that the doctrine of separation of powers does not apply to local government. In a five-to-four decision, the majority in Ball v. Fitzpatrick found that Fitzpatrick had not violated art. I, §§ 1 and 2 of the Mississippi Constitution of 1890 by serving both as Veterans Administration Clerk and Inventory Control Clerk for Lowndes County, and as an elected member of the Council for the City of Columbus.
Essentially rejecting the state and local dichotomy upon which the State relies, R.G. argues that as a division of the Chancery Court, the youth court is part of the judicial branch of state government. It "was created as a division of the Chancery Court in counties which do not have county or family courts, and the chancellor presides over such Youth Court proceedings." In the Interest of D.L.D., 606 So.2d 1125, 1127 (Miss. 1992) citing Miss. Code Ann. § 43-21-107(3) (Supp. 1991). R.G. contends that the statute blurs any distinction between chancery court judges and county court judges when performing the function of a youth court judge. R.G. asserts that the youth court does, indeed, function as a state court, and thus, that the State's position would result in "selective unconstitutionality," artificially distinguishing between those counties where a county court or family court judge acts as a youth court judge and those where this function is performed by a chancellor.
We find considerable support for R.G.'s assertion that the functions of the school attendance officer place that position within the executive branch of our state government. The school attendance officer is charged with enforcing part of a state-wide scheme requiring children to attend school. This argument is best articulated in Stone v. State ex rel. Bossong, 208 Ind. 65, 194 N.E. 642 (1935), where the Indiana Court, in finding that the legislature had the power to create school offices of attendance and devise a method of selecting attendance officers, held:
The work of a county attendance officer obviously contributes to the efficiency of the school system and is a proper and legitimate instrumentality therefor. School officials are agencies for the state employed in the administration of the school system; and, regardless of whether their authority and duties are state-wide or are limited to smaller administrative units, they are part of the state school system and perform a state function. The office of county attendance occupies the same relation, legally, to the state school system and the local community as the office of county superintendent. Respecting the latter, this court made the following statement: "The office in question belongs to the executive department of the state, and the duties attached to it are, strictly speaking, of a merely administrative character; that is, are in aid of the execution of, and assist in giving force and effect to, other provisions of our common-school system." Elmore v. Overton (1886) 104 Ind. 548, 4 N.E. 197, 199, 54 Am.Rep. 343.
Stone, 208 Ind. at 71, 194 N.E. at 644. See also, City of Bloomfield v. Davis County Community School District, 254 Iowa 900, 904, 119 N.W.2d 909, 912 (1963) ("the school district is an arm or agency of the state"); Jones v. Grand Ledge Public Schools, 349 Mich. 1, 5, 84 N.W.2d 327, 329 (1957) ("Education belongs to the State. It is no part of the local self-government inherent in the township or municipality except as so far as the legislature may choose to make it such."); Slippery Rock Area Joint School System v. Franklin Township School District, 389 Pa. 435, 442, 133 A.2d 848, 852 (1957) ("a school district is an agency of the State, created by law for the purpose of promoting education, deriving all of its powers from the statute, and discharging only such duties as are imposed upon it by statute.").
The youth court judge, whether a chancellor or a county court judge, is not a mere local official but an officer of the court and part of the state judicial system. The school attendance officer, likewise, performs a function which is part of state government. The *957 job of attendance officer is executive in nature, enforcing the provisions of the statute. While serving at the will and pleasure of the youth court judge, the school attendance officer is paid by the state and works as part of a statewide network geared to enforcing the Compulsory School Attendance Law. Article I, section 2 of the Mississippi Constitution expressly prohibits an individual or group of individuals belonging to one of the three branches of government from exercising any power rightfully vested in another department.

III.
While it concedes that the task of appointing and supervising a school attendance officer might be "characterized as an executive duty," the State contends that these are ministerial functions, apparently because "they do not go to the core of the state's executive power."[2] In oral argument, the State likewise argued that these functions did not go to the core of the judge's judicial powers. Asserting that a youth court judge's duties with respect to school attendance officers are only ministerial in nature, the State suggests that art. I, §§ 1 and 2 of the Mississippi Constitution of 1890 have not been violated. The State relies primarily on Dye v. State ex rel. Hale, 507 So.2d 332 (Miss. 1987), for the proposition that:
not every act is an exercise of power. Not all "overlapping" is constitutionally proscribed, regarding low level "administrative matters." Alexander, 441 So.2d at 1337. But where the acts are "ongoing and are in the upper level of government affairs" and have a substantial policy making character, the "trespass reaches constitutional proportions." Alexander, 441 So.2d at 1337. The essence of Alexander is that no officer of one department may perform a function "at the core" of the power properly belonging to either of the other two departments." Alexander, 441 So.2d at 1345-46.
Id. at 343, citing Alexander v. State ex rel. Allain, 441 So.2d 1329 (Miss. 1983).
The State urges us to accept its argument that the hiring and supervision of school attendance officers does not go to the core of the State's executive powers, or for that matter, the heart of the judge's judiciary powers, without defining the "core" powers of either the executive or judiciary branches of government. We have, however, clearly articulated those definitions.
Finding that a variety of boards and commissions properly belonged within the executive branch of government, we stated in Alexander that:
Their primary functions, as revealed by their enacting legislation, are to carry out laws previously enacted. Once a law is enacted, the executive department has the duty to administer and enforce it.
Alexander, 441 So.2d at 1343.
In Hall v. State, 539 So.2d 1338 (Miss. 1989), we defined the "core" powers of the judiciary branch as follows:
As trials are the core activity for the judiciary, so the promulgation of rules for the regulation of trials lie[s] at the core of the judicial power.
Hall, 539 So.2d at 1346.
Clearly, the "core" function of the school attendance officer is to enforce the Compulsory School Attendance Law, an executive function. We find that in selecting and supervising the school attendance officers, the youth court judge is charged with the executive function of administering an existing law, far removed from his judiciary functions. In effect, he would become a "super" superintendent.
The language of Section 2 makes no distinction between ministerial and discretionary *958 or any other type of duties. In Ball v. Fitzpatrick it was observed that art. I, § 2:
refers to "any and all offices." Thus the plain wording of § 2 clearly applies to persons exercising any power in any office belonging to one of the three branches of government. According to Webster's Third New International Dictionary (1971), the term "office" refers not only to positions of governmental authority but also to any "assigned or assumed duty, task or role" including "consulting, record keeping, [and] clerical work." (Emphasis added); see also Webster's New Dictionary of Synonyms (1973) (describing the term "office" as analogous to "task, job, chore, stint").
* * * * * *
... [I]t is clear that § 2 draws no distinction between ministerial offices and offices that have the power to effect policy. Section 2 expressly applies to "any" office. The word "any" is self-explanatory.
Ball, 602 So.2d at 879 (McRae, J., dissenting) (emphasis in original). The selection and supervision of school attendance officers involves a considerable exercise of discretion. However, given the language of the constitution, regardless of whether the duties are ministerial or discretionary, the prohibitions of art. I, § 2 are applicable. Thus the State's argument is without merit.

IV.
We find that R.G. has met the burden of overcoming the strong presumption of constitutionality that undergirds our statutory law. The school attendance officer's functions are strictly executive, whereas the youth court judge's duties are clearly judicial. Thus the county court judge correctly found that Miss. Code Ann. § 37-13-91 violates the separation of powers provisions of the Mississippi Constitution. However, we reverse that portion of the trial court order placing the Madison County school attendance officers under the supervision and control of the State Department of Education. Having declared the statute unconstitutional, the county judge divested himself of any authority over the school attendance officers and thus, was without power to make the reassignment.
Accordingly, we affirm the county court judge's finding that § 37-13-91 violates the separation of powers clause of the Mississippi Constitution of 1890 by placing school attendance officers under the supervision of control of youth court judges. However, we reverse and render that part of the opinion which sua sponte placed the Madison County school attendance officers under the jurisdiction of the State Department of Education.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS and JAMES L. ROBERTS, Jr., JJ., concur.
SMITH, J., not participating.
NOTES
[1] R.G. admitted that he had missed forty-five days of school during the 1991-1992 school year and was found to be delinquent. The Youth Court's disposition of his case is not at issue in this appeal.
[2] The State further bases its premise that the youth court judge's duties with regard to school attendance officers is "ministerial" in nature on the definition of the duties of a school trustee in Broadus v. State, 132 Miss. 828, 96 So. 745 (1923):

We think the office of school trustee is an administrative office, and would appear to have many duties of executive or ministerial, and quasi-judicial character ...
* * * * * *
[t]he duties of a trustee are not wholly executive nor entirely judicial, but the office is largely ministerial ...