744 So.2d 299 (1999)
ATTORNEY GENERAL and Dept. of Mental Health
v.
In the INTEREST OF B.C.M., A Minor.
No. 1998-CA-00994-SCT.
Supreme Court of Mississippi.
July 29, 1999.
Office of the Attorney General by T. Hunt Cole, Jr., Attorney for Appellants.
Herbert Wayne Wilson, Gulfport, Michael E. Bruffey, Biloxi, Attorneys for Appellee.
EN BANC.
SMITH, Justice, for the Court:
¶ 1. Today, we consider a constitutional issue which we did not reach on procedural grounds in State v. Watkins, 676 So.2d 247 (Miss.1996): By conditioning the delivery and admission of a patient for court-ordered mental treatment on the determination *300 by the admitting institution's director that facilities and services are available, does Miss.Code Ann. § 41-21-77 (Supp. 1998), violate Article 4, § 86 of the Mississippi Constitution which directs that "[i]t shall be the duty of the legislature to provide by law for the treatment and care of the insane...."
¶ 2. When faced here with a director's determination that facilities and services were not available for the court-ordered treatment of a minor, the Family Court of Harrison County found that § 41-21-77 violated Section 86 and declared the statute unconstitutional and void. We disagree, and accordingly we reverse and render. However, we hold that § 41-21-77 (Supp.1998) requires the director of the admitting facility to assume the responsibility of providing treatment, care and housing for mentally ill minors even if they are not immediately admitted to the facility as soon as they are committed by the lower court.

STATEMENT OF FACTS
¶ 3. In 1997 in the Family Court of Harrison County, B.C.M. was adjudicated a "delinquent" minor after B.C.M. kicked a teacher. In 1998 B.C.M. was back in Family Court after contaminating his stepfather's insulin. At that time the Family Court released B.C.M. to the custody of Gulf Oaks Hospital, where he was to undergo evaluation with a report to be prepared for the court.
¶ 4. As a result of the evaluation, B.C.M. was found to be a danger to himself and others and in need of treatment. It was recommended that B.C.M. be committed to the Oak Circle Facility at the Mississippi State Hospital, with long-term residential care to follow.
¶ 5. The Family Court ordered that B.C.M. be admitted to the Mississippi State Hospital at Whitfield no later than Wednesday, May 20, 1998. The court also ruled that in the event the hospital refused to admit B.C.M. on the designated day, there would be a hearing at 9:00 a.m. on Thursday, May 21, 1998, to determine the constitutionality of Miss.Code Ann. § 41-21-77 (Supp.1998). Notice of the hearing was sent to the Attorney General of the State of Mississippi, Dr. Albert Hendrix, Director of the Mississippi State Department of Mental Health, James Chastaine, Director of Mississippi State Hospital at Whitfield, and various Assistant Attorneys General for the State of Mississippi.
¶ 6. When the Mississippi State Hospital at Whitfield failed to admit B.C.M. at the time designated by the court, a hearing was held. The court ruled that Miss.Code Ann. § 41-21-77 (Supp.1998) violated Section 86 of the Mississippi Constitution and was therefore void. A final judgment was entered declaring the statute unconstitutional "insofar as said section grants to the director of an admitting facility the right to decline immediate acceptance of a committed individual." The Attorney General of the State of Mississippi and the Department of Mental Health filed a timely appeal.
STATEMENT OF THE ISSUES
I. WHETHER THE FAMILY COURT OF HARRISON COUNTY ERRED BY HOLDING MISS. CODE ANN. § 41-21-77 IS UNCONSTITUTIONAL UNDER SECTION 86 OF THE STATE CONSTITUTION INSOFAR AS IT GRANTS TO THE DIRECTOR THE RIGHT TO DECLINE IMMEDIATE ACCEPTANCE OF A COMMITTED MINOR.
II. WHETHER THE FAMILY COURT OF HARRISON COUNTY ERRED IN ITS ORDER OF MAY 15, 1998, AND ACTED IN AN ULTRA VIRES MANNER BY ORDERING THE STATE DEPARTMENT OF MENTAL HEALTH TO ACCEPT B.C.M. FOR IMMEDIATE ADMISSION TO A STATE INSTITUTION, *301 WITHOUT REGARD FOR WHETHER SPACE WAS AVAILABLE IN THE FACILITY AND CONTRARY TO THE PROVISIONS OF MISS. CODE ANN. § 41-21-77.

STANDARD OF REVIEW
¶ 7. The issues before us are all questions of law which we review under a de novo standard of review. Mauney v. State ex rel. Moore, 707 So.2d 1093, 1095 (Miss.1998). It is well established in Mississippi that legislative enactments are subject to judicial review. State v. Mississippi Ass'n of Supervisors, Inc., 699 So.2d 1221, 1223 (Miss.1997) (citing In Interest of R.G., 632 So.2d 953, 955 (Miss.1994), Alexander v. State By and Through Allain, 441 So.2d 1329, 1333 (Miss.1983)). Deference must be given to statutes and the presumption of constitutionality that must accompany them. See State v. Jones, 726 So.2d 572, 573 (Miss.1998). To be successfully challenged, the legislation must be shown to be in "palpable conflict with some plain provision of the constitution." State v. Mississippi Ass'n of Supervisors, Inc., 699 So.2d at 1223 (citing In the Interest of T.L.C., 566 So.2d 691, 696 (Miss.1990)). Any legitimate interpretation that creates a reasonable doubt of unconstitutionality may prevent the court from striking the statute. See id. (quoting Wells v. Panola County Bd. of Educ., 645 So.2d 883, 888 (Miss.1994)).
DISCUSSION OF THE LAW
I. WHETHER THE FAMILY COURT OF HARRISON COUNTY ERRED BY HOLDING MISS. CODE ANN. § 41-21-77 IS UNCONSTITUTIONAL UNDER SECTION 86 OF THE STATE CONSTITUTION INSOFAR AS IT GRANTS TO THE DIRECTOR THE RIGHT TO DECLINE IMMEDIATE ACCEPTANCE OF A COMMITTED MINOR.
II. WHETHER THE FAMILY COURT OF HARRISON COUNTY ERRED IN ITS ORDER OF MAY 15, 1998, AND ACTED IN AN ULTRA VIRES MANNER BY ORDERING THE STATE DEPARTMENT OF MENTAL HEALTH TO ACCEPT B.C.M. FOR IMMEDIATE ADMISSION TO A STATE INSTITUTION, WITHOUT REGARD FOR WHETHER SPACE WAS AVAILABLE IN THE FACILITY AND CONTRARY TO THE PROVISIONS OF MISS. CODE ANN. § 41-21-77.
¶ 8. Miss.Code Ann. § 43-21-611 (1993) provides the Youth Court with dispositional alternatives where a minor has been adjudicated to be delinquent or in need of special care. The statute provides that if the minor is to be civilly committed, the civil commitment "shall be in compliance with the requirements of civil commitment set forth in Section 41-21-61 et seq." The statute goes on to say that:
... Nothing contained in this section shall require any state institution, department, or agency to provide any service, treatment, or facility if said service, treatment, or facility is not available....
Miss.Code Ann. § 43-21-611 (1993).
¶ 9. Section 41-21-77 provides in pertinent part:
If admission is ordered at a treatment facility, the sheriff, his deputy or any other person appointed or authorized by the court shall immediately deliver the respondent to the director of the appropriate institution; provided, however, that no person shall be so delivered or admitted until the director of the admitting institution determines that facilities and services are available. Persons who have been ordered committed and are awaiting admission may be given any such treatment in the facility by a licensed physician as is indicated by standard medical practice....
*302 Miss.Code Ann. § 41-21-77 (Supp.1998) (emphasis added). The statute in question here concerns the assignment of a constitutional duty, and, as will be shown below, it is not necessary to view Section 41-21-77 as in "palpable conflict" with the Constitution, State v. Mississippi Ass'n of Supervisors, Inc., 699 So.2d at 1223, as long as the statute is interpreted to shift the constitutional duty of care from the courts to the directors of the applicable state institutions at the time commitment is ordered.
¶ 10. After the director of the State Hospital at Whitfield refused to admit B.C.M. for lack of space, the Family Court of Harrison County held that Miss.Code Ann. § 41-21-77 (Supp.1998) violated Section 86 of the Mississippi Constitution. Section 86 states:
It shall be the duty of the legislature to provide by law for the treatment and care of the insane; and the legislature may provide for the care of the indigent sick in the hospitals of the state.
(emphasis added.)
¶ 11. The Family Court of Harrison County asserts that the statute fails to provide care for all persons ordered committed in that it only provides care for those whom the director of the institution finds available space and services. The Family Court would have us believe that those committed, but denied immediate admission to a state institution, are being denied treatment and care. This may or may not be the case.
¶ 12. If a minor is refused admission and no treatment, care or temporary placement is provided while awaiting admission to the facility, then in fact, treatment and care have been denied. In fact, in the case at bar, counsel for the State argued to the Family Court that "no person shall be so delivered or admitted until the director of the admitting institution determines that facilities and services are available." Thus, we must assume that B.C.M. was never admitted to the mental health facility.
¶ 13. A plain reading of the statute reveals:
... Persons who have been ordered committed and are awaiting admission may be given any such treatment in the facility by a licensed physician as is indicated by standard medical practice....
Miss.Code Ann. § 41-21-77 (Supp.1998) (emphasis added). The Amendment Note states that the first and second 1994 amendments inserted the second sentence to provide treatment for mental patients awaiting admission. Clearly, there was an intent by the Legislature to provide treatment for those caught in limbo between the time of their commitment and their actual admission to the state institution.
¶ 14. First, the instruction that the respondent be delivered immediately to the director of the appropriate institution is followed by the qualification that "no person shall be so delivered or admitted until the director of the admitting institution determines that facilities and services are available." Miss.Code Ann. § 41-21-77 (Supp.1998). This qualification is merely a protection against overcrowding. It does not equip the director of such an institution to exercise discretion regarding the necessity of an individual's placement in a state facility. There is nothing in this statement by the Legislature suggesting that the director has any authority to override a court's decision to commit an individual.
¶ 15. The duty to care for the mentally ill is constitutionally mandated. At the same time, however, we construe the language in the statute to shift the burden of interim housing and treatment to the state in the person of the director of the selected, appropriate institution. "Persons who have been ordered committed and are awaiting admission may be given any such treatment in the facility by a licensed physician as is indicated by standard medical practice." Miss.Code. Ann. § 41-21-77 (Supp.1998)(emphasis added). This is the only description of the interim period between *303 commitment and admission that the statute offers.
¶ 16. However, the fact that the individual's treatment should be guided by the assigned facility suggests that, at the time the commitment is ordered, the assigned institution takes control of the individual's treatment and temporary placement, even if there is no physical space available so that he or she may take residence at the assigned facility or at another state facility suitable to the director of the facility. When the statute mandates the treatment of such individuals to the assigned facility, it is also assigning the burden of their treatment and care, and with that, the burden of their housing as well.
¶ 17. The Constitution mandates that the Legislature provide for the care of the insane, see Miss. Const., Art. 4, § 86; it places no restrictions on how the Legislature may allot that duty of care. In this case the Legislature has chosen the directors of the relevant state institutions to serve as the agents of the state to fulfill this constitutional duty.
¶ 18. It is reasonable to construe the statute to place the burden of care on the director of the state facility for purposes of efficiency as well. How could it be logical for the assigned facility to take over full responsibility for the treatment of an individual, but not be granted control over his residential placement, both temporary and permanent? Additionally, the director of a state facility is much more knowledgeable about temporary housing most comparable to the state facility and is better able to find a suitable alternative temporary placement.
¶ 19. Furthermore, temporary housing and appropriate "treatment in the facility by a licensed physician as is indicated by standard medical practice," are required by the statute for a minor such as B.C.M. The Family Court Judge here had no other choice but to order commitment of this minor. B.C.M. could not be adjudged a delinquent under the pleadings, could not be legally placed in a training school or temporarily housed in the Harrison County Detention Facility for Juveniles, and could not be released pending availability of services and facilities because of his being a danger to family members. The Constitution requires that the State assume responsibility for B.C.M., and reasonable statutory interpretation requires the director to provide temporary housing, treatment and care, which should become permanent when adequate "services and facilities are available" in the facility. The only role of the trial judge regarding this minor was to determine whether the minor needed the treatment and care provided by the state facility, and if so, to order B.C.M.'s commitment.

CONCLUSION
¶ 20. Section 86 of the Mississippi Constitution clearly provides that the Legislature is to care for the insane. The Legislature has done so by, inter alia, enacting Miss.Code Ann. § 41-21-77 (Supp.1998), which requires the director of the admitting facility to assume the responsibility of providing treatment and care for mentally ill minors even if they are not immediately admitted to the facility as soon as they are committed by the lower court.
¶ 21. The appellee has failed to show that the statute and the Constitution' are in "palpable conflict." The statute is not unconstitutional. We hold that a reasonable interpretation and reading of Miss.Code Ann. § 41-21-77 (Supp.1998) does not violate Article 4, § 86 of the Mississippi Constitution. The lower court was correct to be concerned about the denial of care and treatment to minors such as B.C.M., but, in holding that the statute violated the Constitution, the lower court erred. Properly interpreted, the statute requires care, treatment and housing to be given to minors such as B.C.M., both temporarily and permanently upon a lower court's order of commitment. We reverse and render the judgment of the Harrison County Family *304 Court.[1]
¶ 22. REVERSED AND RENDERED.
PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, MILLS, WALLER AND COBB, JJ., CONCUR.
McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.
McRAE, Justice, dissenting:
¶ 23. When a mentally ill minor is adjudged by the trial court to be a detriment to himself and others such that he requires immediate admission to a mental health treatment facility, § 86 of the Mississippi Constitution of 1890 mandates admission of the minor in the court-ordered State institution. The State is required to provide appropriate facilities for the mentally ill at its own expense. The State may neither claim there is "no room in the inn" nor allow the mentally ill to be either confined in a jail or housed at the county's expense. To properly treat the minor's illness, the State may not wait to provide such care. Waiting is unreasoned since the mentally ill minor has already been adjudged potentially harmful to himself and others. Nonetheless, Miss.Code Ann. § 41-21-77 (Supp.1998), the statute relative to § 86, contravenes the constitutional law as it allows the director of the mental institution to choose, at any time, whether to admit the mentally ill minor.[2] Stamping the statute constitutional provides the director authority to take time and do what that director wants without consideration of the mentally ill minor's needs. Today, the majority sanctions such director behavior and thereby derogates our constitution. I dissent.
¶ 24. The Director of the Mississippi State Hospital at Whitfield should be required to admit B.C.M. immediately at either a state or private facility. While close to being constitutional, the language of statutory § 41-21-77 (Supp.1998) is unconstitutional if the director may decide not to admit a court-ordered committed person pursuant to the language that "no person shall be so delivered or admitted until the director of the admitting institution determines that facilities and services are available." See Miss.Code Ann. § 41-21-77 (Supp.1998) (emphasis added). The majority is granting the director authority to trump the judgment or order of the trial court. The director may summarily state there is no room in the facility. The director may wait six months, a year, even two years to act upon a court-ordered admission without fearing contempt of court because the majority has interpreted the statute as constitutional. Such behavior by the director is contra to our legal system of checks and balances. The director is allowed to deprive mentally ill people of the care the judge deemed necessary. The director is given license to, despite the judge's admonition, keep the mentally ill in jail when such people need to be given specialized care. Persons committed need treatment, protection, and care because they are hazards to themselves and society. The courts have taken such people from society because they are a threat. If such persons are not admitted into the appropriate institutions, they are forced to remain in jail. The majority is regressing as it effectually advocates incarceration over commitment for those whom the court system has committed. Such detention in jail not only is detrimental *305 to the health of the committed person, it also unconstitutionally shifts the § 86 burden of care and expense from the State to the county. Trumping the trial court and advocating incarceration for the mentally ill is not what § 86 of our constitution is about.
¶ 25. Section 86 of article 4 of our Mississippi Constitution places a duty upon the Legislature to provide treatment and care for the insane.[3]See id. In his hallowed treatise, Mississippi Constitutions, former Justice George H. Ethridge wrote regarding § 86:
This is a most humane provision making it obligatory on the legislature to care for the insane. People who have lost their reason are always a burden and a menace to society unless they are placed in some institution where they may be confined and treated. Under modern medicine many of those who were formerly considered hopeless are cured and restored to society as useful members. Many cases of insanity yield readily to good treatment, but unless they are committed to an asylum they will not receive it.
George H. Ethridge, Mississippi Constitutions 199 (1928). The statute, § 41-21-77, is intended to be a legislative realization of that which the constitution requires. The statute provides in pertinent part:
If admission is ordered at a treatment facility, the sheriff, his deputy or any other person appointed or authorized by the court shall immediately deliver the respondent to the director of the appropriate institution; provided, however, that no person shall be so delivered or admitted until the director of the admitting institution determines that facilities and services are available. Persons who have been ordered committed and are awaiting admission may be given any such treatment in the facility by a licensed physician as is indicated by standard medical practice.
Miss.Code Ann. § 41-21-77 (Supp.1998). Treatment under the statute is not enough; care is also required. Further, facility care is necessary to protect and sufficiently care for those who are adjudged detrimental to the greater society and, as a result, committed. Under the statute, the trial court orders admission at a treatment facility, whatever that appropriate institution may be. If the director cannot admit the mentally ill to the director's facility, then that director must immediately find an alternative facility-public or private-that will admit the mentally ill. While the majority should never assume anything in a record because it is neither the position of the legal community in general nor of this Court in particular to assume, the majority does assume, and clearly states, that B.C.M. was never admitted. The majority makes true the point that the statute allows impingement of the rights of our mentally ill.
¶ 26. Under our constitution, the director does not have a choice of when to admit the mentally ill person. The mentally ill must be immediately placed in a public or private facility. Hence, the State has the responsibility to immediately admit B.C.M. and bear his expense. The State may not wait until admission is most convenient for it. The State has a responsibility to find facility care for B.C.M. immediately upon court order. Any language in § 41-21-77 that allows the director to trump the court order of commitment is unconstitutional. Particularly, I would hold unconstitutional the language that "no person shall be so delivered or admitted until the director of the admitting institution determines that facilities and services are available." This is because the constitution requires the legislature to place language in the statute that requires the director to admit the mentally ill immediately upon court order. *306 The current statutory language allows a delay tactic by the director insofar as the director may determine if a particular facility can take the committed person.
¶ 27. The trial judge determined that B.C.M. needed care and treatment. The director's delay impaired B.C.M.'s constitutional rights, particularly his right to liberty, because of B.C.M.'s adjudged need for treatment and care to function optimally. The director should not be able to delay implementation of the trial judge's commitment decision. Because the legislature allowed delay, the legislature's language conflicts with the constitution. I dissent.
NOTES
[1] We note that 1999 legislation abolishing the Family Court, 1999 Miss. Laws Ch. 432, has recently become effective on May 28, 1999, when the U.S. Attorney General precleared it under Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c. Section 1 of this new legislation directs in pertinent part: "all matters pending in any family court abolished shall be transferred to the county court of the county wherein the family court was located without the necessity of any motion or order of court for such transfer."
[2] The statute reads, in pertinent part, that "no person shall be so delivered or admitted until the director of the admitting institution determines that facilities and services are available." See Miss.Code Ann. § 41-21-77 (Supp.1998).
[3] Section 86 states that "[i]t shall be the duty of the legislature to provide by law for the treatment and care of the insane; ..." See Miss. Const., art. 4, § 86.